UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

|  |  |
|---|---|
| DENNIS E. THOMPSON and PAMELA A THOMPSON, <br><br> Plaintiffs, <br> v. <br><br> OCWEN LOAN SERVICING LLC, <br><br> Defendant. | Case No. 14-CV-1502-JPS |
| WELLS FARGO BANK NA, <br><br> Plaintiff, <br> v. <br><br> DENNIS E. THOMPSON and PAMELA A THOMPSON, <br><br> Defendants. | Case No. 14-CV-1522-JPS <br><br><br><br> ORDER |

The roots of these two separate bankruptcy appeals extend all the way back to the turn of this century. On April 14, 2000, the debtors, Dennis and Pamela Thompson, executed a mortgage and signed a home financing adjustable rate note.[1]

The Thompsons allegedly defaulted on this note, prompting the servicer, The Provident Bank ("Provident") to file a foreclosure action in Milwaukee County Circuit Court. That court granted Provident's motion for summary judgment and entered a judgment of foreclosure in December of 2002.

---

[1] The Court draws these facts from the bankruptcy court's memorandum decision and order that is currently on appeal. (Case No. 14-CV-1522, Docket #2 at 174–177).

A bit more than two years later, in April of 2005, Provident filed a motion in Milwaukee County Circuit Court, stating that Provident was wrongly named as the plaintiff and requesting that Wells Fargo, be substituted as the plaintiff in the foreclosure action. It does not appear that the Thompsons received notice of the substitution motion, and the Milwaukee County Circuit Court granted the motion the same day the petition was filed.

Shortly thereafter, on May 13, 2005, the Thompsons filed a Chapter 13 bankruptcy petition.[2] On May 24, 2005, Wells Fargo, through its loan servicer,[3] filed a proof of claim for the amounts owed by the Thompsons on the note. The Thompsons objected to Wells Fargo's proof of claim. In September of 2006, the bankruptcy court entered an order allowing the claim, but disallowing certain fees and charges and also sanctioned the loan servicer for mishandling the Thompsons' account.

The bankruptcy court also confirmed the Thompsons' Chapter 13 plan. The Thompsons agreed to make mortgage payments directly to the servicer and to cure their pre-petition arrearage by making payments to the trustee.

More than five years later, in June of 2011, the Thompsons requested leave to participate in the bankruptcy court's mortgage modification

---

[2]Both of these appeals arise from the still-ongoing proceedings related to that petition.

[3]In 2005, Litton Loan Servicing LP ("Litton") serviced the loan. Since that time, Litton merged with Ocwen Loan Servicing LLC ("Ocwen"). Ocwen is listed as the appellee in the Thompsons' appeal (Case No. 14-CV-1502), whereas Wells Fargo is listed as the appellant in its own appeal (Case No. 14-CV-1522). The same attorney, however, represents both Ocwen and Wells Fargo in the two separate appeals, and the Court will generally refer to the parties as "Wells Fargo" in this order.

mediation program. In conducting a title search on their property, the Thompsons discovered that Wells Fargo was not listed as holding title to their mortgage.

Thus, in March of 2012, the Thompsons filed a "Motion to Dismiss Due to Wrongful Foreclosure and For Lack of Standing," which the bankruptcy court construed as an objection to Wells Fargo's claim. The bankruptcy court had, of course, previously allowed Wells Fargo's claim in September of 2006.

The bankruptcy court reversed course and, in March of 2013, disallowed Wells Fargo's claim, finding that Wells Fargo did not have standing to file the claim, because it had not produced admissible evidence to establish that it was the proper holder of the note. Wells Fargo, through its servicer, immediately appealed that ruling, and the appeal was assigned to this Court.

While the appeal was pending (indeed only ten days after the appeal was filed), the Thompsons filed motions requesting: (1) reimbursement of the payments they had made to Wells Fargo on the assumption that Wells Fargo's claim was valid; and (2) attorney's fees. The bankruptcy court entered an order staying resolution of those motions until after this Court entered its decision on appeal.

This Court entered an order on January 7, 2014, affirming the bankruptcy court's disallowance of Wells Fargo's claim. *Ocwen Loan Servicing, LLC v. Thompson*, No. 13-CV-487, 2014 WL 51236 (E.D. Wis. Jan. 7, 2015).

After this Court rendered its decision, the Thompsons filed additional motions with the bankruptcy court, requesting that: (1) the mortgage note

actually be returned to them; and (2) they be reimbursed payments made by the trustee to Wells Fargo.

The bankruptcy court asked for briefing from the parties on the Thompsons' four outstanding motions, and ultimately issued an order granting in part and denying in part the Thompsons' requests. Specifically, the bankruptcy court granted the Thompsons' requests for reimbursement, ordering that Wells Fargo pay:

(1) $73,041.49 back to the Thompsons to reimburse them for:

    (a) payments totaling $97,979.68 made after Wells Fargo's claim had been allowed and before it had been disallowed, and

    (b) $7,500.00 in sanctions against Wells Fargo, less

    (c) $32,438.19 paid in property taxes by Wells Fargo on the Thompsons' behalf; and

(2) $11,716.90 back to the trustee to reimburse the trustee for payments it had made to Wells Fargo under the Thompsons' Chapter 13 plan.

The bankruptcy court, however, denied the Thompsons' motions for attorney fees and to have the mortgage note returned to them.

Wells Fargo and the Thompsons separately filed motions for reconsideration, on November 4, 2014, and November 17, 2014, respectively. As a result, Wells Fargo's motion for reconsideration was timely under Bankruptcy Rule 9023, which incorporates Rule 59(e) of the Federal Rules of Civil Procedure. The Thompsons, on the other hand, did not file their motion for reconsideration within Bankruptcy Rule 9023's time limits, meaning that the bankruptcy court could review it only under Bankruptcy Rule 9024, which incorporates Rule 60 of the Federal Rules of Civil Procedure. The bankruptcy court denied the parties' motions for reconsideration.

Thereafter, both parties appealed the bankruptcy court's dispositive orders. The Thompsons' appeal was docketed as Case No. 14-CV-1502. On appeal, the Thompsons argue that the bankruptcy court erred in five ways:

(1) in calculating the amounts to be returned to the Thompsons;

(2) by disregarding the Thompsons' request for interest on the reimbursed amounts;

(3) in denying the Thompsons' request for attorney fees;

(4) in denying the Thompsons' request for return of the mortgage note; and

(5) in ignoring the Thompsons' request for sanctions against Wells Fargo for allegedly making misrepresentations.

(Case No. 14-CV-1502, Docket #4 at 4). Meanwhile, Wells Fargo's appeal was docketed as Case No. 14-CV-1522. On appeal, Wells Fargo argues that the bankruptcy court erred in four ways:

(1) in addressing the Thompsons' request for reimbursement as part of the Thompsons' Chapter 13 proceedings;

(2) in rejecting Wells Fargo's *Rooker-Feldman* arguments;

(3) in ordering that Wells Fargo make direct restitution to the Thompsons; and

(4) in determining that the matter was a core proceeding under 28 U.S.C. § 157(b)(2), leading the bankruptcy court to issue a final order instead of proposed findings of fact and conclusions of law.

(Case No. 14-CV-1502, Docket #7 at 8–9).

Perhaps owing to the fact that the Thompsons are proceeding *pro se*, the parties seem to have been confused about their filings. Wells Fargo filed its opening brief in Case No. 14-CV-1522 on February 4, 2015. (Case No. 14-CV-1522, Docket #7). The Thompsons filed their opening brief in Case No. 14-CV-1502 on February 4, 2015, and two weeks later filed a document titled

"Reply Brief." (Case No. 14-CV-1502, Docket #4, #7). That "Reply Brief," however, actually seems to be the Thompsons' *response* brief to Wells Fargo's opening brief in Case No. 14-CV-1522, simply mis-captioned and mis-labeled by the Thompsons; this view finds support in the content of the document labeled "Reply Brief" and the fact that the Thompsons never filed a response brief in Case No. 14-CV-1522. (*See* Case No. 14-CV-1502, Docket #7; Case No. 14-CV-1522, generally). Neither party filed a reply brief in its respective case. The time for filing a reply brief, however, has long since passed, so the Court understands this matter to be fully briefed and will proceed to address the issues that have been raised.

1. WELLS FARGO'S APPEAL

The Court begins with Wells Fargo's appeal, which attacks the more substantive of the bankruptcy court's decisions: the bankruptcy court's order that Wells Fargo reimburse the Thompsons for the payments they made directly to the mortgage servicer.[4]

1.1 Standard of Review

Wells Fargo filed its motion for reconsideration within the time limits of Bankruptcy Rule 9023. Its motion, thus tolled the time for it to appeal the bankruptcy court's underlying order. Bankr. R. 8002(b)(1)(C). Thus, the Court reviews the bankruptcy court's factual findings for clear error and its legal conclusions *de novo. In re Marcus-Rehtmeyer*, No. 14-1891, --- F.3d ----, slip op. (7th Cir. Apr. 28, 2015) (citing *In re Mississippi Valley Livestock, Inc.*, 745 F.3d 299, 302 (7th Cir. 2014)).

---

[4]Wells Fargo insists that it has retained the right to challenge the bankruptcy court's order that it pay back the plan payments it received from the trustee. (Case No. 14-CV-1522 at 5 n.1). Wells Fargo, however, never provides the Court with any argument in this regard.

1.2    Analysis

The Court is obliged to remand this case,

It is not clear what authority the bankruptcy court was proceeding under in ordering Wells Fargo to reimburse the Thompsons the money they had paid directly to Wells Fargo. The bankruptcy court did not provide any statutory or legal authority for taking that action.

Assuming that its reconsideration of its original allowance of Wells Fargo's claim was under Bankruptcy Rule 3008 and 11 U.S.C. § 502(j),[5] perhaps the bankruptcy court intended for its reimbursement order to flow from that statute. But that probably would not be proper; 11 U.S.C. § 502(j) appears only to cover return of money to *the trustee*. 11 U.S.C. § 502(j) ("This subsection does not alter or modify the trustee's right to recover from a creditor any excess payment or transfer made to such creditor."). *See also* Bankruptcy Law Manual § 6:31 (5th ed.) *(*"Third, § 502(j) preserves the estate's rights to recover excess payments made to any creditor. Thus, the court has discretion to order disgorgement from the creditor whose claim is being reconsidered pending resolution of the correct amount of the claim.") (emphasis added) (citing *Kronish Lieb Weiner & Helman, LLP v. Fort*, 2005 WL 6111632 (D.S.C. 2005), *aff'd*, 197 Fed. App'x 261 (4th Cir. 2006); *In re Barker*, 306 B.R. 339 (Bankr. E.D. Cal. 2004), both of which deal with return of money to trustee). This understanding is consistent with the bankruptcy court's order, which mentioned 11 U.S.C. § 502(j) only in ordering Wells Fargo to return money to the trustee. (Case No. 14-CV-1522, Docket #2 at 13–15).

---

[5]Unfortunately, it has never been clear what authority the bankruptcy court acted under in reconsidering its original allowance of Wells Fargo's claim. The only logical answer is 11 U.S.C. § 502(j), which does not provide any time limit for such reconsideration. However, the bankruptcy court, the parties, and this Court never clarified that point during the earlier proceedings.

The bankruptcy court's analysis appears to ultimately turn on either a finding of unjust enrichment or an equitable analysis. The most relevant paragraph states in full:

> Although Wells Fargo has responded to the Debtors' request for a refund with a plea for equity, in fact, the equities here favor the Debtors. A claim for unjust enrichment is based on the "universally recognized moral principle that one who received a benefit has the duty to make restitution when to retain such a benefit would be unjust." *Puttkammer v. Minth*, 83 Wis. 2d at 689 (quoting *Fullerton Lumber Co. v. Korth*, 37 Wis. 2d 531, 536 (Wis. 1968)). However, it is not enough to merely establish that a benefit was conferred and retained; the retention must also be inequitable. *Id.* This Court previously determined that Wells Fargo is not the holder of the Debtors' mortgage note with legal authority to enforce it; that determination was affirmed on appeal. Without authority to enforce the note, Wells Fargo is not entitled to receive payments under the note. Only the party with a legally enforceable right to enforce the note is entitled to retain the benefit of the Debtors' mortgage payments. Nevertheless, Wells Fargo, through its servicers, received voluntary payments from the Debtors and payments from the Trustee since the commencement of this bankruptcy case, subjecting the Debtors to the possibility of having to pay twice if the true owner of the note appears. Since Wells Fargo and its servicers have no legal right to the Debtors' mortgage payments, retention of the Debtors' mortgage payments would be inequitable.

(Case No. 14-CV-1522, Docket #2 at 184–85 (footnote omitted)). It is in that paragraph that the bankruptcy court reached its decision to require Wells Fargo to reimburse the Thompsons. As best the court can discern, the inequity conclusion is ultimately the last portion of the bankruptcy court's finding that the Thompsons had a claim for unjust enrichment against Wells Fargo. (*See* Case No. 14-CV-1522, Docket #2 at 184 ("A claim for unjust enrichment is based on…")). However, the Court also acknowledges that the

bankruptcy court began the paragraph by discussing its view that "the equities here favor the Debtors." (Case No. 14-CV-1522, Docket #2 at 184).

In its order on the parties' motions for reconsideration, the bankruptcy court focused on the fact that the Thompsons' payments to Wells Fargo could, technically, be viewed as part of the Chapter 13 plan as cure-and-maintain payments under 11 U.S.C. § 1322(b)(5). (E.D. Wis. Bankr. Case No. 05-28262, Docket #285 at 5–6). Thus, the bankruptcy court concluded that "[w]hen Wells Fargo's claim for the pre-petition arrearage on the mortgage was disallowed because Wells Fargo does not validly hold the mortgage note, it followed that not only the Trustee payments (the 'cure') but the Debtors' direct payments (the 'maintain') should be refunded." (E.D. Wis. Bankr. Case No. 05-28262, Docket #285 at 6). It went on,

> By conceding that it must return the Trustee payments, Wells Fargo exposes the fallacy in its argument about the Debtors' direct payments. Since it had no ability to enforce the mortgage note, Wells Fargo was not entitled to receive any mortgage payments in this case, whether from the Trustee or the Debtors. Since Wells Fargo received the payments under a confirmed Chapter 13 plan under a provision of the Bankruptcy Code that permits the Debtors to de-accelerate and reinstate their mortgage, despite the foreclosure judgment, the payments were received on the disallowed mortgage claim, not on the foreclosure judgment. The Court rejects Wells Fargo's argument that the Debtors' payments were not related to and did not flow from the disallowed claim. As part and parcel of the claims allowance process and directly related to the Chapter 13 plan in this case, this Court had authority to order Wells Fargo to refund the Debtors' payments.

(E.D. Wis. Bankr. Case No. 05-28262, Docket #285 at 6–7). Thus, in addressing the motion for reconsideration, the bankruptcy court did not discuss the concept of equity or of unjust enrichment. Instead, it found that it had

authority to order Wells Fargo to refund the Thomsons' payment "[a]s part and parcel of the claims allowance process."

In light of the bankruptcy court's statements, it seems that there could be three potential bases for its order: (1) a finding that allowing Wells Fargo to keep the payments would constitute unjust enrichment; (2) a finding that allowing Wells Fargo to keep the payments would be inequitable; or (3) the fact that the disgorgement was "part and parcel" of the claims allowance process. If it was either the first or second of those bases, it would appear that the proper procedure would have been for the bankruptcy court to treat the debtors' request for reimbursement of their direct payments as an adversary proceeding. *See* Bankr. R. 7001(1), (7). Bankruptcy Rule 7001 provides that "a proceeding to recover money or property," which in theory would include a claim for unjust enrichment, and "a proceeding to obtain an injunction or other equitable relief," are adversary proceedings. Bank R. 7001(1), (7). Thus, when the Thompsons filed their requests for reimbursement, if the bankruptcy court viewed those requests as being demands for monetary or equitable relief, it should have treated the requests as adversary proceedings. On the other hand, if the bankruptcy court was relying on the third base—that the disgorgement was "part and parcel" of the claims allowance process—the Court questions whether the bankruptcy court had any authority to act. As already discussed, it does not appear that 11 U.S.C. § 502(j) provides authority for the bankruptcy court to disgorge fees to anyone other than the trustee. Perhaps the bankruptcy court believes that it does, but it did not expressly state so and did not provide any justification. Otherwise, the Court cannot find any statutory or legal authority that supports a broad power for bankruptcy courts to reconsider earlier

allowances of claims and to thereafter return payments. *See* Bankr R. 3001–3022.

The Court can understand *why* the bankruptcy court took the path that it did. It seems to be the most logical and expedient way of accomplishing the task at hand. Unfortunately, this Court cannot find any authority giving the bankruptcy court the power to take the step that it did. Thus, the Court is obliged to vacate and remand the bankruptcy court's order that Wells Fargo reimburse the Thompsons for their direct payments.

There is one other issue that the Court finds it appropriate to address on this appeal: Wells Fargo's *Rooker-Feldman* argument.

> *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), hold that the Supreme Court of the United States is the only federal court that may review judgments entered by state courts in civil litigation. The *Rooker–Feldman* doctrine applies when the state court's judgment is the source of the injury of which plaintiffs complain in federal court. *See Exxon Mobil* [*Corp. v. Saudi Basic Indus. Corp.*], 544 U.S. [280,] 293 [(2014)]; *GASH Associates v. Rosemont*, 995 F.2d 726, 729 (7th Cir. 1993).

*Harold v. Steel*, 773 F.3d 884, 885 (7th Cir. 2014). *Exxon Mobil* "clarified that '[p]roceedings end for *Rooker-Feldman* purposes when the state courts *finally resolve* the issue that the federal court plaintiff seeks to relitigate in the federal forum.'" *Parker v. Lyons*, 757 F.3d 701, 706 (7th Cir. 2014) (quoting *Mothershed v. Justices of the Supreme Court*, 410 F.3d 602, 604 n.1 (9th Cir. 2005), and agreeing with its reasoning to conclude that *Rooker-Feldman* does not bar the claims of plaintiffs who "file a federal suit when a state-court appeal is pending.").

The Court agrees with the bankruptcy court that *Rooker-Feldman* cannot bar any of the proceedings under review because Wells Fargo's

substitution as the plaintiff on the judgment of foreclosure is not yet final. The bankruptcy stay intervened to stay the Thompsons' time to appeal the district court's order granting Wells Fargo's substitution. Thus, the Thompsons might still appeal that order.

As such, the Court finds that *Rooker-Feldman* does not bar the bankruptcy court's further review on remand. Nonetheless, the Court wonders whether the better course for the bankruptcy court would be to lift the stay, so that the Thompsons can fully litigate the foreclosure judgment in the state courts. However, if the state court order becomes final and an adversary proceeding or other procedure becomes necessary, further *Rooker-Feldman* problems may present themselves. *See, e.g.*, *In re Kohar*, 525 B.R. 248, 253 (Bankr. W.D. Pa. 2015) (collecting potentially-relevant cases) (citing *In re Washington*, 469 B.R. 587 (Bankr. W.D. Pa. 2012); *In re Stewart*, 473 B.R. 612, 630–31 (Bankr. W.D. Pa.2012); *Sheikhani v. Wells Fargo Bank*, 577 Fed. App'x 610 (7th Cir.2014); *In re Agard*, 444 B.R. 231, 243–44 (Bankr. E.D.N.Y. 2011); *Schmid v. Bank of America, N.A.*, 498 B.R. 221, 225 (W.D. Wis. 2013); *In re Kalid*, 472 B.R. 1 (Bankr. E.D. Mich. 2012); *In re Hinson*, 481 B.R. 364 (Bankr. E.D.N.C. 2012)).

2.  THE THOMPSONS' APPEAL

The Thompsons challenge several aspects of the bankruptcy court's order. Because the Court's review of their appeal is substantially limited as a result of their late filing of their motion for reconsideration, the Court rejects their arguments and affirms the bankruptcy court on all of the issues the Thompsons raise.

2.1  Standard of Review

The Thompsons did not file their motion for reconsideration within the time limits prescribed by Bankruptcy Rule 9024. Therefore, the

Page 12 of 16

Case 2:14-cv-01522-JPS   Filed 05/29/15   Page 12 of 16   Document 8

bankruptcy court properly reviewed their motion for reconsideration under Rule 60(b) of the Federal Rules of Civil Procedure, which Bankruptcy Rule 9024 incorporates.

The Court, therefore, can review only the bankruptcy court's denial of the Thompsons' motion for reconsideration, as opposed to the underlying order denying their requests. *See, e.g.*, Bankr. R. 8002(b)(1)(D) (tolling time for appeal only if motion for reconsideration under Rule 9024 is filed within 14 days after entry of judgment); *Banks v. Chicago Bd. of Educ.*, 750 F.3d 663, 666–67 (7th Cir. 2014); *In re Catura*, 175 Fed. App'x 93, 94–95. The Court's review of the bankruptcy court's denial of the Thompsons' motion for reconsideration is extremely high. *Bakery Machinery & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 848 (7th Cir. 2009) (lower court "has great latitude in making a Rule 60(b) decision because that decision is discretion piled on discretion."). Because of the potential that parties may use a Rule 60(b) motion to circumvent the time limit for filing an appeal, generally "a party invoking Rule 60(b) must claim grounds for relief 'that could not have been used to obtain a reversal by means of a direct appeal.'" *Banks*, 750 F.3d at 667 (quoting *Kiswani v. Phoenix Sec. Agency, Inc.*, 584 F.3d 741, 743 (7th Cir. 2009)).

2.2     Analysis

As the court has already discussed, the Thompsons argue that the bankruptcy court erred in five ways:

(1)     in calculating the amounts to be returned to the Thompsons;

(2)     by disregarding the Thompsons' request for interest on the reimbursed amounts;

(3)     in denying the Thompsons' request for attorney fees;

(4) in denying the Thompsons' request for return of the mortgage note; and

(5) in ignoring the Thompsons' request for sanctions against Wells Fargo for allegedly making misrepresentations.

(Case No. 14-CV-1502, Docket #4 at 4).

The Court is obliged to affirm the bankruptcy court on the first of those points, relating to the calculation of amounts to be returned to the Thompsons. The Thompsons argue that the bankruptcy court erred by creating "Exhibit A," a list of the Thompsons' mortgage payments from which the bankruptcy court reached its final reimbursement figure, and not counting certain payments. (Case No. 14-CV-1502, Docket #4 at 6–7). The bankruptcy court closely considered and rejected the debtors' arguments in this regard, finding that the "lost payments" identified by the Thompsons were, in fact, included in its calculation. (E.D. Wis. Bankr. Case No. 05-28262, Docket #285 at 12–13). Moreover, the Thompsons have not provided any evidence that would undermine the bankruptcy court's finding. (Case No. 14-CV-1502, Docket #4 at 6–7). Certainly, they have not shown that the bankruptcy court abused its discretion in any way.

The same is true of the bankruptcy court's rejection of the Thompsons' request for reconsideration on the attorney fees issue. The bankruptcy court actually denied the Thompsons' motion for reconsideration on procedural grounds, pointing out that the Thompsons were attempting to add information and rehash their arguments. (E.D. Wis. Bankr. Case No. 05-28262, Docket #285 at 13–14). The Court agrees. And, in any event, the Thompsons have not shown any way in which the bankruptcy court erred in denying their request for attorney fees. For these reasons, the bankruptcy

Page 14 of 16

Case 2:14-cv-01522-JPS   Filed 05/29/15   Page 14 of 16   Document 8

court did not abuse its discretion in denying the Thompsons' motion for reconsideration.

The Court also rejects the Thompsons' argument that the bankruptcy judge should have addressed their motion for reconsideration regarding interest. It is unfortunate that the bankruptcy court did not address that issue (*see generally* E.D. Wis. Bankr. Case No. 05-28262, Docket #285), in spite of the fact that the Thompsons raised it (E.D. Wis. Bankr. Case No. 05-28262, Docket #282 at 4). Nonetheless, that was an issue that the Thompsons could and should have raised on direct appeal, as opposed to in a motion for reconsideration. The Court, therefore, will not provide them relief on appeal. *Banks*, 750 F.3d at 667.

As to the Thompsons' fourth and fifth arguments on appeal—relating to the denial of their requests for return of the mortgage note and for sanctions—they did not raise those arguments in their motion for reconsideration (E.D. Wis. Bankr. Case No. 05-28262, Docket #282 at 1–4), meaning that they cannot now challenge those issues on appeal.

3. CONCLUSION

In sum, the Court is obliged to vacate the bankruptcy court's order directing Wells Fargo to reimburse the Thompsons and remand this case for further proceedings consistent with this opinion. It has, however, rejected all of the Thompsons' arguments on appeal. Therefore, the Court will affirm in part, vacate in part, and reverse these matters for further proceedings.

Accordingly,

IT IS ORDERED that the orders of the bankruptcy court under review be and the same are hereby AFFIRMED in part, VACATED in part, and REMANDED for further proceedings consistent with this order.

IT IS FURTHER ORDERED that these cases be and the same are hereby DISMISSED.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 29th day of May, 2015.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge